## No. 11,044.

DAVIS *v.* HARBAUGH, EXECUTOR, ET AL.

Decided July 23, 1924.

Action involving the construction of a will.   Judgment for defendants.

### *Reversed in Part.*

1. WILLS—*Devised Rents and Profits, When Due.*  Under a will devising rents and profits from the estate property, only the county court having jurisdiction over the estate may determine when such rents and profits are due and payable.

2.    *Estates.*  The law favors a vested rather than a contingent estate.

3.    *Construction.*  In the case under consideration, the rights of a devisee of a life estate under the terms of a will, held subject and inferior to the payment of debts, expenses of administration and a specific legacy therein mentioned.

4.    *Life Estate—Rents and Profits—Construction.*  Where a will directed the payment of debts and a specific legacy, and gave the rents, issues and profits arising from the residue of the estate to a daughter of the testatrix with remainder to others, it is held that as between the life tenant and the remaindermen, it was optional with the life tenant to designate what portion of the estate should be first applied to the payment of prior claims, and that she should be first considered in the order of taking.

5.    *Life Estate—Rents and Profits, When to Begin.*  Under the terms of a will giving rents, issues and profits on the residue of the estate to the daughter of the testatrix, the time for the beginning of rents and profits should be at the death of the testatrix, although the amount thereof could only be ascertained and made payable at a later date and in the course of administration.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. JOSEPH C. EWING, Mr. WORTH ALLEN, for plaintiff in error.

Mr. E. H. HUTCHENS, for defendants in error.

*Department One.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action in equity by Grace Davis, a legatee, to obtain a construction of the will of Mercy S. Thompson, deceased, particularly of the third clause thereof, on which items one, two, four and seven are supposed to throw light. These clauses are: "First. I direct that all of my just debts and funeral expenses be paid as soon after my decease as conveniently may be. Second. I hereby give, devise and bequeath to the First Baptist Church of Greeley, in Weld County, Colorado, the sum of Two Thousand ($2,000.00) Dollars, said sum to be used for the benefit of said Church as the Board of Trustees thereof shall deem wise. Third. I hereby give, devise and bequeath to Grace Davis, the daughter of Ella Davis, the rents, issues and profits arising from my property, both real and personal, of which I may die seized and possessed for and during her life if she shall survive me; provided, however, my said debts and funeral expenses and the legacy provided for in paragraph second shall first be paid. Fourth. I hereby give, bequeath and devise the rest, residue and remainder of my estate wheresoever situate, whereof I may die seized or possessed or to which I may in any manner be entitled or in which I may be interested at the time of my death to", here follow the names. Seventh. Power is hereby given to my executor hereinafter named to sell and convey by good and sufficient deed or deeds of conveyance any and all of my real estate for the purpose of paying my just debts, funeral expenses, cost of administration and said legacy if it shall be found necessary."

The district court construed clause three to mean, as contended by the executor and remaindermen, that the plaintiff Grace Davis was and is entitled to the rents, is-

sues and profits arising from the estate, "contingent and conditioned" that the debts, funeral expenses and the legacy of $2,000 to the First Baptist Church of Greeley, Colorado, provided for in clauses one and two, first be paid from the rents, issues and profits arising from the estate during the period of the first year of administration thereof so far as sufficient, any remaining unpaid balance to be then paid from the corpus of the estate, and that plaintiff is entitled to receive the rents, issues and profits arising from the estate only from and after the expiration of the first year of the administration thereof, to-wit: February 24, 1924, less a deduction for payment made by the executor of an inheritance tax in behalf of this plaintiff. The plaintiff has brought the case here for a review of this judgment.

It is conceded by the plaintiff that her rights are subject to the inheritance tax advanced for her by the executor. Her contention is here, as it was below, that the rents, issues and profits of the entire estate belong to her, commencing at the death of testatrix, subject only to the proper deduction therefrom for enough to pay repairs, insurance, etc., if the corpus of the estate is sufficient to pay the debts, funeral expenses, costs of administration and the legacy of $2,000. She insists that the creditors and the other legatee are not concerned because all debts that are established against the estate and the legacy must first be paid, even though she receives nothing; but as there is enough to pay all claims, the debts, legacy, etc., should be paid out of the corpus of the estate. The question for consideration, as both parties agree, is one between plaintiff, the life tenant, and the remaindermen.

The admitted facts are that personal assets of the testatrix at her death are not sufficient to pay the debts, costs of administration, funeral expenses, and the legacy of $2,000. The gross income from the improved property of the estate is about $225 per month. The estate is solvent, the real estate being of the value of $25,000 or $30,000. The executor, and the only one of the remaindermen who appeared, contend that the will requires that the debts,

costs of administration and the legacy be paid out of the
rents and profits and not out of the corpus of the estate,
so that the corpus or principal of the estate at the death
of the life tenant may pass intact and unimpaired to the
remaindermen. While some reference or suggestion has
been made in the briefs of counsel as to whether the will
created or intended to create a trust to be carried out by
the executor, it is doubtful if such an issue is tendered in
the pleadings, and it certainly was not determined by the
district court, and we, therefore, express no opinion con-
cerning it.

In a leading case, *Bartlett v. Slater,* 53 Conn. 102, 22 Atl.
678, 55 Am. Rep. 73, it is stated to be the general rule that
where no time of payment of a legacy is fixed by the will,
the executor is allowed one year from the testator's death
to ascertain and settle his affairs and meanwhile a legacy
is not payable. Upon that ground interest or income is
payable on the legacy only from that time. To this general
rule are recognized exceptions, of which two are relied
upon by the plaintiff: One, where the legacy is given to
the testator's minor child, or to one to whom the testator
is in loco parentis, and there is no other provision for its
maintenance; the other exception is where the legacy is
of the residue of the testator's estate, or of some aliquot
part thereof, in trust to pay the interest or turn over the
income to the life tenant, remainder over at his death.
Other cases of the same import are: *Cook v. Lanning,* 40
N. J. Eq. 369, 372, 3 Atl. 132; *Simonsen v. Hutchinson,* 231
Ill. 508, 83 N. E. 183; *Lacey v. Collins,* 134 Iowa, 583, 112
N. W. 101; *Greene v. Rathbun,* 32 R. I. 145, 78 Atl. 528;
*Lewis v. Darling,* 16 How. (U. S.), 1, 14 L. Ed. 819; *Lamb
v. Lamb,* 11 Pickering, (Mass.), 371; *Lawrence v. Security
Co.,* 56 Conn. 423, 15 Atl. 406, 1 L. R. A. 342; *Bancroft v.
Security Co.,* 74 Conn. 218, 50 Atl. 735; *Sargent v. Sargent,*
103 Mass. 297, 299; *Lovering v. Minot,* 9 Cush. (Mass.),
151; *Van Blarcom v. Dager,* 31 N. J. Eq. 783; *Metcalfe v.
Hutchinson,* L. R. 1 Ch. Div. 591; Schouler on Wills (5th
ed.), p. 758, Par. 579.

We do not think any of the authorities relied upon and cited by the executor are in point. Indeed, the opinions in some of these cases recognize as exceptions to the general rule the two which the plaintiff here invokes as sustaining her contention.

To avoid misapprehension, not because the instant case comes within it, it is appropriate to refer to *Cobb v. Stratton's Estate*, 56 Colo. 278, 138 Pac. 35, Ann. Cas. 1915C, 1166, which decides that where a legacy is a designated sum of money, the will not specifying the time of its payment, the common law rule as to the time of payment and the commencement of the enjoyment of the interest or income therefrom is not applicable. We said there that under our statute (Sections 5358, 5361, C. L. 1921), such a legacy is not payable in any event until after the court in charge of the estate makes an order directing payment; and as the legacy itself cannot be paid until after entry of the order, interest on the legacy, if payable at all, begins to run only from the date of the order. The court went further in that case and held that under our statute no provision is made for interest on a money legacy in an amount certain. We do not think the Cobb decision governs the case now before us. In one sense interest on a legacy in a sum certain corresponds, if it is not equivalent, to rents and profits on the residue of the estate, real and personal. It should be borne in mind that the question for our determination is not when the rents and profits are due and payable, but when do they begin to run, or from what time are they to be computed. The rents and the profits are what the property itself yields. They are the very substance of the gift. They represent the usufruct of the estate, and, therefore, the Cobb rule that interest on a legacy is not allowed, does not apply here. There the point first determined was that a pecuniary legacy in a fixed sum does not draw interest; and, secondly, if it did, the interest would not begin to run until after the county court in charge entered an order directing payment of the legacy. The question here involved was not an issue there; it is, not

whether interest is provided for rents and profits of a residuary estate, but when do the rents and profits themselves begin. The parties here are agreed that the plaintiff is entitled to rents and profits. The Cobb Case throws no light upon the time when they accrue. With that question prior claimants are not concerned, for as to them plaintiff gets nothing until after they are satisfied. So that they get their money, they do not care from what source it comes, but as between the life tenant and the remaindermen it is an important question. The testatrix is presumed to know the value and extent of her property, how much was real estate, how much was personal. She also knew approximately the amount of rents and profits that it would yield. If it was her desire to devote rents and profits to the payment of debts and a prior legacy, etc., and not immediately to the maintenance of the plaintiff, who was the first object of her solicitude and care and whose necessities began the moment of her benefactor's death, it is strange, indeed, that she did not expressly so declare. Such an intention, which is inconsistent with what she expressly said in the will, is also negatived by the seventh clause, in which is conferred on the executor, if found necessary, the power to sell any or all of her real estate for the purpose of paying the prior claims and demands and the legacy. The rents and profits, and all of them, the testatrix knew would be needed to care for her daughter. And it is not a reasonable implication that she intended to give to her executor the power to withhold from the plaintiff, who was in such sore need, the rents and profits until after prior claims, a charge on her entire estate, were satisfied out of them, when she expressly empowered the executor to satisfy, if necessary, prior claims from the proceeds of the sale of her real estate. The parties being in accord that the rents and profits are a charge upon the estate and are to be paid before the affairs of the estate are settled, we do not decide, and, under the decision in the Cobb Case, only the county court that has charge of the estate may determine, when the rents and profits are due and payable.

The beginning of the time for their computation, however, is a proper subject for determination in this action. The cases above cited abundantly support the plaintiff's contention that the rents, issues and profits begin with the death of the testatrix. The law favors a vested, rather than a contingent, estate. As between the plaintiff legatee and the church, which has a specific pecuniary legacy, and as to the debts, funeral expenses and costs of administration, provided for in the first and second clauses, and which by the third clause are directed to be first paid, the plaintiff's rights in the estate under the third clause are subject and inferior. If all of the estate would be consumed in paying them, plaintiff, of course, would get nothing, but though the personal property of the estate—primarily the fund for paying legacies—is insufficient, the realty is more than adequate, therefor. The real question then is, may the executor pay the prior claims, in whole or in part, out of the rents and profits of the residue of the estate which are given to the plaintiff for life, or is he restricted to the corpus or principal of the residuum estate in discharging them. If there be only enough property to discharge the prior claims, there would be no residuum of the estate for the plaintiff, the life tenant, but there is, or will be in due course of time, much more than enough assets to pay prior claims out of the rents and profits or out of the corpus. If out of the rents and profits exclusively, or in part, the plaintiff's income, until full payment of the prior claims is made, will be nothing, and the corpus or principal of the estate, at the death of the life tenant, which will then devolve upon the remaindermen, will be augmented in value to the extent of the total amount of such payment. If prior claims must come out of the corpus, then the plaintiff will receive out of rents and profits a sum equal to the amount of the prior claims which otherwise would finally go to the remaindermen, if payment of prior claims is out of rents and profits. That, if the prior claims are paid out of the proceeds of the sale of the corpus of the estate or some part thereof the capital fund, on which plaintiff's future

rents and profits are to come, will thereby be diminished to the extent of its value, and that, if her rents and profits are used to liquidate them, the capital fund remains intact, is no justification, against her protest, for so applying them. As between the life tenant and the remaindermen, they are to be paid out of such portion of her residuary estate as she chooses. All of it is hers for life; her devise and legacy of rents and profits therefrom is in law equivalent to a devise or legacy of the real and personal estate itself. The remaindermen are not vested with the option, it is her option, to designate what portion of her estate shall first be applied to the prior claims. If ultimately her present desire, when accomplished, results in her loss and to the gain of the remaindermen, she may not complain, and, of course, they would not.

Obviously, and so the district court held, it was the intention of the testatrix to provide for life adequate maintenance for the plaintiff, whom she considered as her daughter, and who, as the testatrix knew, was, and would probably continue to be, a hopeless invalid. She had no resources of her own and was unable to earn a living, and, considering her physical condition, she was and is as incapable to care for or support herself as if she were a minor child. For one so incapacitated the rents and profits of the entire residuum of the estate would be necessary. The plaintiff's mother, from her early infancy until her death, and the plaintiff herself, from the time of her own birth, lived continuously with the testatrix and her husband and until the husband's death, and thereafter the plaintiff lived with the testatrix until the latter's death. The plaintiff's mother was always considered by her benefactors as their own daughter and the plaintiff as their granddaughter, though neither was legally adopted. Mother and daughter lived in the Thompson family as members thereof, were supported and maintained as such by the Thompsons and treated as if they were legally adopted, or had been their own children.

In view of these relations, as between plaintiff and the

remaindermen, plaintiff was unquestionably first in the thought of the testatrix. If there is any doubt or uncertainty about the source or the property out of which should come the money to pay prior claims, it should be resolved in her favor. As between a life tenant and a remainderman, the former is first in order of taking, first in order in receiving the bounty of a testator, and ought first to receive the attention of the court, and in doubtful cases a first taker is preferred. *Metcalfe v. Hutchinson, supra;* 40 Cyc. pp. 1413, 1415, 1417; 28 R. C. L. pp. 270, 272. The testatrix knew that plaintiff was dependent for support upon her bounty, which was provided in the will, and that payment of prior claims must be made out of the residue of property included in the third clause, either of the principal or the income. If the executor has the power to apply, and may only apply, the rents and profits for the first year to the prior claims, plaintiff's source of maintenance meanwhile is cut off and the remaindermen's bounty is increased. If payment is made from a sale or mortgage of the principal or some part thereof, plaintiff will or should enjoy the use of the rents and profits accruing from and after the death of the testatrix. We see no reason why the remaindermen should be preferred and get an advantage at the expense of the life tenant, which testatrix never intended. It may be said, and we have not made the calculation to determine, that since, in any event, these prior claims are to be satisfied out of the residuum of the estate, either from the income of the same or of the corpus itself, it is immaterial to the plaintiff whether the executor applies the rents and profits thereto or discharges them with the proceeds of a sale or mortgage of the principal. The answer is that the plaintiff needs, from the very moment of the death of the testatrix, the rents and profits for her very existence, and is given the right by the will so to apply them. She was first in the eye of the testatrix, the preference is hers. We think the common law rule justifies our conclusion.

Has section 5262, C. L. 1921 changed it? This section

declares that the executor is entitled to and shall receive the rents, issues and profits arising out of the real and personal property of the estate and when collected the same shall be assets for the payment of debts, legacies and costs of administration and shall be administered as is money arising from the sale of personal property. The section is cited by the executor as authority for applying the rents, issues and profits to the payment of the prior claims. We do not think it is. The statute says such application may be made, "unless otherwise provided by will". Mrs. Thompson's will has "otherwise expressly provided" that the rents, issues and profits shall go to the plaintiff, and her right thereto, which is the usufruct of the devised estate, begins with the death of the testatrix. This is so under the common law rule when the will has not otherwise fixed the time, and the entire scheme of this will contemplates that the plaintiff life tenant, whom the testatrix knew was wholly dependent from the moment of her death upon the bounty provided in her will, should enjoy the income of the residuary estate in its entirety from the moment of her death. Section 5358, C. L. 1921, is also invoked by the executor and the remaindermen. This section authorizes the county court to direct the executor in certain circumstances to pay all legacies and no such order has been made by the county court in this estate. Absence of such an order might have been urged below as showing the suit to be premature, though we do not say that such would be the effect. We must presume, however, that the executor will not pay any legacy or demand against the estate until the proper order is made by the county court and that the county court in due time will make the order. We also may rightly presume that, if it becomes necessary, the county court might and will require, if the financial condition of the estate justifies it, that the executor from time to time shall make advances out of available funds in his hands to the life tenant for her maintenance, until such time as it may legally ascertain the amount of the entire indebtedness of the estate, which cannot in any event be

until after the expiration of one year from the granting of letters of administration. The rule which we say is applicable here is not at all inconsistent with the decision in the Cobb Case, that in no event is a legacy payable until after the entry of an order by the court having charge of the estate, directing payment. The time for the beginning of the rents and profits should begin with the death of the testatrix, even though the amount thereof is ascertained and made payable at a later date in the course of administration.

We conclude, therefore, that since the plaintiff is, for the purpose of this case, to be considered as the minor daughter of the testatrix, for whose maintenance this legacy is the only provision, and as the legacy or devise of the residuary estate is for her life, with the remainder over, and the will itself has not fixed the time when the rents, issues and profits are to begin, the right of the life tenant thereto begins from the death of the testatrix, though the amount thereof is to be computed later and the time of payment is to be fixed by the county court. As the principal of the estate is abundantly sufficient to pay the prior claims, the rents and profits shall not thereto be applied, in whole or in part. They must be satisfied by sale or mortgage of the principal or corpus.

The decree of the district court, which in some respects harmonizes with our conclusion, may be by it either modified so as fully to coincide and comply therewith, or, at its option, set aside in its entirety, and a new one entered, which must be in accordance with the views expressed in this opinion. The district court divided the costs equally between the plaintiff and the defendants appearing at the trial. The costs of this review should be apportioned in the same way.

Reversed in part and cause remanded.

MR. JUSTICE ALLEN and MR. JUSTICE BURKE concur.